**SIGNED THIS: January 21, 2009**

_____
**WILLIAM V. ALTENBERGER
UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEVIN JOHN GLADWELL and | ) | No. 06-82063 |
| KIMBERLEY JOY GLADWELL, | ) | |
| | ) | |
| Debtors. | ) | |

### O P I N I O N

This matter is before the Court on the motion of Kevin and Kimberly Gladwell (the Debtors), for turnover of disability credit insurance payments received by Citizen's Equity First Credit Union (CEFCU) for a 2004 Chevrolet Silverado when Kevin became disabled and unable to work.[1]

The relevant facts are not in dispute. The Debtors purchased a used 2004 Chevrolet Silverado truck and financed the transaction through a retail installment contract dated May 28, 2004. This contract was assigned to CEFCU. As part of the transaction, Kevin purchased credit disability insurance on himself, and the amount of the single payment premium was included in the amount financed by CEFCU. According to CEFCU, the group credit disability policy provides that

---

[1] The Debtors do not specify the total amount they contend should be turned over by CEFCU.

the benefits are paid to CEFCU to pay off or reduce the insured credit union member's loan, and, if the benefits are more than the balance of the loan, the difference is to be paid to the member, if living, or to the beneficiary named by the member, if they are not then living.[2]

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on December 8, 2006. On January 24, 2007, CEFCU filed a proof of claim totaling $31,606.58. Of that amount, CEFCU claimed that $20,325 was secured and the remainder was unsecured. The Debtors' amended plan was confirmed on April 10, 2007. The amended plan provides that CEFCU is to receive $20,325 at 6% interest secured by the 2004 Chevrolet Silverado, with the remaining balance of $11,281.58 to be classified as unsecured. The Debtors' plan provides for an estimated dividend to the unsecured creditors of 0%.

In early 2008, Kevin became disabled, and disability payments were made to CEFCU under the terms of the policy. CEFCU applied the disability payments to reduce the unsecured portion of the Debtors' loan balance. The Debtors seek turnover of the credit disability payments received by CEFCU, asserting that such payments are property of the Debtors' estate and therefore should be turned over to the Trustee and applied toward payments under the Chapter 13 plan. CEFCU counters that credit disability insurance payments are not property of the Debtors' bankruptcy estate because CEFCU is the sole and primary beneficiary of the credit disability insurance policy and therefore has rightfully been paid the proceeds.

Section 541 of the Bankruptcy Code provides that the property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). Property of the estate also includes "[p]roceeds . . . of or from property of the estate," 11 U.S.C. § 541(a)(6), and "[a]ny interest in property that the estate acquires

---

[2] Neither party has presented the Court with a copy of the actual credit disability insurance policy at issue.

after commencement of the case." 11 U.S.C. § 541(a)(7). Additionally, in Chapter 13 cases, the definition of estate property also includes, in addition to the property specified in § 541, "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(1).

Insurance polices and debtor's rights under insurance policies have generally been held to constitute property of the bankruptcy estate. *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). However, ownership of an insurance policy does not necessarily entail entitlement to receive the proceeds of that policy. *In re Feher*, 202 B.R. 966, 969 (Bankr.S.D.Ill. 1996). Whether the proceeds of an insurance policy are property of a debtor's estate depends upon the nature of the policy and the specific provisions governing the parties' interests in the payment of policy proceeds. *Id*. (citing *In re Hill*, 174 B.R. 949, 952 (Bankr.S.D.Ohio 1994)). The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. *Edgeworth*, 993 F.2d at 55. The owner of an insurance policy cannot obtain greater rights to the proceeds of that policy merely by filing a bankruptcy petition. *In re Denario*, 267 B.R. 496, 499 (Bankr.N.D.N.Y. 2001). Thus, the question of whether the proceeds of an insurance policy are property of the estate must be analyzed in light of the facts of each case. *In re CHS Electronics, Inc.*, 261 B.R. 538, 542 (Bankr.S.D.Fla. 2001) (citing *In re First Cent. Financial Corp.*, 238 B.R. 9, 16 (Bankr.E.D.N.Y. 1999)).

In *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir. 1993), the Third Circuit Court of Appeals addressed the question of the ownership of the proceeds of a credit life insurance policy. In *McAteer*, the debtor-husband purchased a credit life insurance policy as security for an automobile loan. The policy named the creditor bank as the primary beneficiary, and Mr. McAteer as the

3

secondary beneficiary. The policy provided that, in the event of Mr. McAteer's death, the insurance company would pay the creditor bank, as the primary beneficiary, the full amount owed on the loan according to the schedule of indebtedness, plus certain arrearages. If the death benefits exceeded the entire amount owed to the creditor on the loan, the excess would be paid to Mr. McAteer's estate as the secondary beneficiary. *Id.* at 116.

The McAteers filed a joint Chapter 13 bankruptcy petition. After confirming a Chapter 13 plan that "crammed down" the debt owed to the creditor bank to the fair market value of the vehicle, Mr. McAteer died. Mrs. McAteer filed a motion to compel the creditor bank to turn over to the bankruptcy estate the insurance proceeds in excess of the amount due to the creditor bank under the confirmed plan, asserting that the amount of the debt was the crammed down amount under the confirmed plan rather than the contract amount. The court noted that ownership of a life insurance policy does not necessarily entail ownership of the proceeds of that policy. *Id*. Although the debtor owned the credit life insurance policy, the creditor bank and not the debtor was the primary beneficiary under the terms of the policy. *Id.* Accordingly, the creditor's interest in the proceeds of the policy was not property of the estate and, therefore, could not be altered by the confirmation of the debtor's Chapter 13 plan. *Id.* 118-19. Additionally, because the Bankruptcy Code does not alter the rights of a creditor to collect from third parties, the court could not change the terms of the insurance contract by reinterpreting the "debt" to mean the smaller crammed down amount. *Id*. at 119. Likewise, in *In re Goodenow*, 157 B.R. 724 (Bankr.D.Me 1993), the court concluded that, because the debtor's disability insurance policy named the creditor as the primary beneficiary and the insurance proceeds were directly payable to the creditor, the debtor's estate had no interest in the proceeds. *Id.* at 726. The court in *Goodenow* noted that the policy contained no provisions allowing the debtor to designate a different beneficiary; thus, the debtor's only rights under the policy were

4

to force the insurance company to pay under the terms of the policy and, in the rare circumstance of the debtor's repayment of the loan, to recover as the secondary beneficiary. *Id*. It was clear that the debtor could not exert any control over the proceeds before the bankruptcy and consequently had no ownership interest therein. *Id*.

Finally, in *In re Johnson*, 162 B.R. 464 (Bankr.M.D.N.C. 1993), the debtor sought to have the proceeds of a credit disability insurance policy declared to be property of the bankruptcy estate under § 541 and to impose sanctions on the creditor for the wrongful conversion of the funds. The court, citing *McAteer*, held that but for the filing of the bankruptcy petition, there would be no question that the creditor had a right to the proceeds of the insurance policy and therefore the court would not "elevate the rights of the . . . debtor to create an interest in an insurance policy that would not exist but for the bankruptcy filing." *Id*. at 466.

Although the parties did not provide the Court with a copy of the insurance policy at issue, under Illinois law, all polices of "credit life insurance and/or credit accident and health insurance shall, in addition to other requirements of law . . . state that the benefits shall be paid to the creditor to reduce or extinguish the unpaid indebtedness and, whenever the amount of insurance may exceed the unpaid indebtedness, that any excess shall be payable to a beneficiary, other than the creditor, named by the debtor or to his estate." 215 ILCS 5/155.56(b). Thus, a policy of credit life or disability insurance does not vest in the borrower any rights to the proceeds derived from a claim under the policy. Rather, it is only after the indebtedness has been fully satisfied that a borrower gains any rights to surplus proceeds. *See In re Motto*, 263 B.R. 187, 194 (Bankr.N.D.N.Y. 2001) (analyzing a similar provision under New York law). According to the facts provided by CEFCU and not disputed by the Debtors, the provisions of the credit disability insurance purchased by the Debtors in this case appear to track the requirements of the Illinois statute. Additionally, the Debtors

5

have not provided any evidence that they have any additional rights under this policy, such as the right to change the beneficiary.

The Debtors assert that the cases are split on whether insurance proceeds are property of the bankruptcy estate. However, the cases cited by the Debtors in support of this position are inapposite. The first case, *Davis v. Life Investors Ins. Co. of America,* 282 B.R. 186 (S.D.Miss. 2002), dealt with the issue of subject matter jurisdiction of the bankruptcy court. Mr. Davis, the plaintiff, had purchased credit disability insurance in conjunction with the purchase of an automobile from the McNatt dealership. The plaintiff alleged that the insurance company, Life Investors, had wrongfully denied his claim for benefits on the basis that the plaintiff had made material misrepresentations in his application for coverage when, in fact, he had fully disclosed all relevant information to a McNatt employee, who omitted the information from the application. The plaintiff originally filed his suit in state court, and Life Investors removed the case on the basis of diversity jurisdiction. The plaintiff then moved to remand the case to state court. While the case was awaiting briefing by the parties on the remand issue, the McNatt dealership filed for bankruptcy protection under Chapter 11. Life Investors then moved to amend its notice of removal to assert as a newly arisen basis for removal jurisdiction that the pending case was "related to" McNatt's bankruptcy proceeding under 28 U.S.C. § 1134 since McNatt was also a defendant in the plaintiff's suit. The court found that it had subject matter jurisdiction because the case was related to McNatt's bankruptcy due to an indemnity agreement between McNatt and Life Investors and, therefore, the plaintiff's claims could conceivably have an effect on the bankruptcy estate. *Id.* 190. However, the court rejected Life Investor's claims that the proceeding was a core proceeding and found that mandatory abstention applied. *Id*. at 1943-94.

The other two cases cited by the Debtors, *Tringali v. Hathaway Machinery Co., Inc.*, 796

6

F.2d 553 (1st Cir. 1986) and *In re Asay*, 184 B.R. 265 (Bankr.N.D.Tex. 1995), deal with the proceeds of corporate liability insurance and property hazard insurance, respectively, and are likewise inapplicable. In *Tringali*, the plaintiff, who was injured due to the failure of the debtor's product, sued the debtor and received a large award of damages. As a result of this large award, the debtor filed a petition for relief under Chapter 11, and the plaintiff sought relief from the automatic stay to obtain the proceeds under the debtor's liability insurance policy. The plaintiff argued that the proceeds of the liability insurance policy were not property of the estate and therefore were not subject to the provisions of the automatic stay. The court found that the language of § 541 was broad enough to cover the debtor's right to have the insurance company pay money to satisfy debts accrued through the insured's negligent behavior. *Tringali*, 796 F.2d at 560. The court noted that all the courts that had recently considered the issue had concluded that liability insurance falls within the scope of § 541 because it is "valuable property of the debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy." *Id*. (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986)).

In *Assay*, the court determined that fire insurance proceeds received postpetition by the debtors for fire damages to the debtor's building were property of the estate on the ground that the insurance proceeds were "proceeds of the collateral" under § 541(a)(6) as a change in the form of estate property. *Assay*, 184 B.R. at 266. Because the damaged building was property of the estate, the insurance proceeds were likewise property of the estate and, although the insurance policy named the bank/mortgagee as the loss payee, the character of the funds as proceeds of the building did not change. *Id*. at 268.

Accordingly, under the reasoning of *McAteer*, *Goodenow*, and *Johnson*, the proceeds of the

7

credit disability insurance policy are not property of the Debtors' estate under § 541 because, if the Debtors were not debtors in bankruptcy, they would not be entitled to the proceeds unless the full contract balance of the loan was paid off. As noted above, bankruptcy does not create rights in property that did not exist otherwise. *McAteer,* 985 F.2d at 117 (citing *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987)). The Debtors' Motion for Turnover should be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###